Mr. Clerk Your Honor, the third case on the docket this morning is 2-19-0543 Marriage of Brian Cosgrove, Petitioner of Cunningham, and his work in Scotland Thank you. Ms. McAdams, you may proceed. Good morning. May it please the Court, Mr. Clerk. The issues before the Court today are whether the trial court erred in denying the plaintiff's motion to continue and the motion to reconsider the November 19, 2008, order. Ms. McAdams, could you pull the mic down just a tad? Thank you. And the second issue is whether the trial court erred by denying the plaintiff's petition for relief from judgment entered December 7, 2018. Now, may I ask you a question, please? With regard to the 2-14-01 petition, that actually was not the date of the Court's ruling on that was June 3, 2019. That was not included in your notice of appeal. Why is that? It was actually May. The order that was entered denying the petition was June 3, 2019. And the order says that it's for reasons stated on the record. We actually don't have those as part of our record here. But the notice of appeal was filed June 25, and it contains three orders, but not the June 3 order. That was not intentional. I'm not sure why. I thought it was part of the record and intended, so I apologize. Well, the notice of appeal gives us an indication and the authority to review certain things. And if we don't, if that's not on the notice, how is that inadvertent? Because that's clearly what you wanted. It is what I wanted. I thought I had listed that as one of the orders, so I didn't realize that it somehow wasn't included. Well, it seemed like your brief was directed at the denial of the original motion to terminate or reduce child support. And it was based upon your argument that the trial court abused its discretion in holding the hearing in the afternoon after your motion to continue was not heard at 11 o'clock that morning and then proceeded to deny it. And when you moved to reconsider or vacate, it was not done. And you were granted leave to file a new petition, but because the new petition had a later date, that being the date that the amended or new petition was filed, meant that the reduction in child support payments would not be retroactive to the original date that the first petition was filed, but would only relate back to the date that the second petition was filed. And then after all that is said and done, you file a 214-01 motion attacking the December 7th motion, which I believe was the order that allowed you to file an amended pleading and not to vacate the original denial. But the 214-01 was filed within 30 days of the last order that would be otherwise final and appealable. And so, therefore, it wouldn't be a 214-01 because a 214-01 is supposed to be a collateral proceeding, which doesn't become collateral until 30 days after the final judgment is rendered. So there are many aspects, or at least several aspects, of this proceeding and subsequent appeal that are so dysfunctional, for want of a better term. Your 214-01 should have been a motion to vacate because it was a timely motion filed within 30 days, even though it was directed at the December judgment instead of at the, I believe it was the judgment that was made on the 2nd of May? Is that correct? Because you filed the 214-01 on the 24th of May? Correct. So if you haven't appealed the final judgment, which was based upon additional facts that seem to appear on record where the trial court suggests or finds that there were other reasons that weren't discussed previously as to why he is making the ruling that he made, and that would suggest that in order to appeal that decision, you'd have to establish that the reasons that he gave for doing so that are in addition and essentially in a timeline going forward outside of the other orders and motions and judgments would have been prejudicial error. And I don't think you even say anything like that in the briefs, whether or not you've even addressed whether or not we're supposed to consider it. What I did address in my brief was that he made some comments that he was going to make it retroactive to the amended date because there was some evidence at the previous hearing that Ms. Burke had contributed to some expenses for the emancipated child. And so considering that, he thought it was fair. But he had also in that November 19th hearing, the ex parte hearing, denied her motion for contribution to expenses for the emancipated child, saying that there was nothing in their judgment authorizing him to grant any support for an emancipated child, and he couldn't do it retroactive. So he had already denied her request, but he had considered that at the hearing where my client and I were present, saying he had heard that testimony before, and because there was some evidence that she had contributed to the expenses for the emancipated child, he was only going to go retroactive to the date the amended motion was filed. So I had addressed that in my brief, saying that that was improper because he had already found that he couldn't award any support for an emancipated child. Was the original order that denied your petition, did that not find a delinquency in your client insofar as child support was concerned? It was several expenses together. He had set an average based on past medical, I think, extracurricular and child support. So I believe it was like a $9,900 average. He didn't set a delinquency. He had just set an average. Was the amount in that order less or more than the delinquency that he ruled upon or found in the later order? It was less, which didn't make sense that he then set the average of $12,000 at the subsequent hearing. And my argument to him at that point was it should go retroactive to the January of 2018 when the original motion was filed because otherwise you're ordering my client to pay an additional 11 months of child support for a child who's 24, who's emancipated, which is contrary to the law. And I don't know where his math, I don't know how he came to the $9,900 figure. I know after the hearing he had set the average in excess of $12,000. So even though there was a reduction in child support, the average went up. And I never really walked out of the room understanding his math or how he came to that figure. And he wasn't really clear on the record of how he came to that number. So you do point out something that really didn't make sense is that the average actually went up even though the motion was granted. Why exactly was there an average in the first place? Did your client just decide that since the child was emancipated he didn't have to pay anymore and he was going to use some other figure? Or how did that happen? There was a period of time that he was unemployed. Earlier, sometime between 2004 or 2005 when child support was set and when we were in court. So he had consistently through the years paid consistently. It didn't come about when the oldest child turned 18. It wasn't intentional. Eventually he had started his own business and it took him some time to build up his own business. So he didn't have the income he paid when he could, but he didn't pay the full $1,500 figure every month. Were there any prior motions to abate that amount or to reduce that amount during this unemployment period and the startup period? I'm not sure about that. I wasn't hired to do that. I don't believe that child support was reviewed after it was entered in the judgment until I filed the motion and it was eventually heard. You were going to start with your motion to continue. Who other than Ms. Burke was present in the afternoon that day? Nobody was present. I had called my client off. What had happened was the motion to continue was scheduled at 11 o'clock. Ms. Burke didn't appear for the motion to continue. I was there for an order of protection hearing and it was pretty involved and it went long. I just inadvertently forgot to address the motion to continue because the order of protection went past the noon hour. It honestly slipped my mind. So I went to the Secretary of State hearing and realized my mistake after the fact. By then the default judgment had been entered against my client. So you didn't reach an agreement with anyone, Ms. Burke or anyone on our behalf, to continue the matter. It was just you called your client off because you didn't think it was going to be a problem. Correct. That was my mistake. And you do recognize, though, that the motion to continue is strictly a matter of the court's discretion based upon the status, the length, the other issues that have come up in this case. Yes. I knew I wasn't available, that I had had another hearing that I couldn't move. And I guess because it had never been an issue. I know the Secretary of State hearings are very time sensitive, but when did you receive notice of the Secretary of State hearing? The week before I filed it on November 16th. So because there was such a short gap in time, I filed the motion to continue as soon as I realized the conflict. But this was the sixth or seventh time the matter had been continued, isn't that correct? Yes. And that's part of the reason I am alleging it's an abuse of discretion, because I had filed it and scheduled it for January 23rd, 2018, just for presentment. On that date, Ms. Burke was present and was scheduled for hearing on February 20th. On February 20th, she didn't appear for the hearing. So the court continued it on the court's own motion. And if you look at the order, the court even wrote in the order that the clerk was to send her a copy of the order. At that point, it was continued to April 20th of 2018. And again, she didn't appear for the hearing. And rather than go to hearing and enter a default order against her, the court again continued it for her without her there requesting it or without a written motion. And it got continued to May 15th. On May 15th, Ms. Burke appeared, and then she asked orally for a continuance, asking for time to get an attorney. So the judge granted another continuance for her on that day. Meanwhile, my client is continuing to be assessed to child support at the higher rate. She didn't ultimately hire an attorney. The case was continued on two other occasions by agreement so that she could get some information she said she needed. It was continued then on September 25th of 2018. And she came to court on that day again saying she didn't have the discovery she needed. There was no notice to meet in advance, no motion to compel discovery scheduled before that. So when she made an oral motion again to continue, the judge gave her another continuance. So she had been granted four continuances before that date. Two, just by not appearing in the court on its own motion, continued the case for her. And my client had never requested a continuance. I had never requested a continuance before that day. So I maintain that it's an abuse of discretion to then, when the trial court looked through the court file and was ruling on the motion to continue, he had imputed some of those prior continuances on my client. He said that it was set for hearing on January 23rd, April 20th, May 15th, August 7th, and September 25th. And then finally, on today's date, I'm not inclined to continue this any further. And all of those prior continuances were not my client's fault in any way. So I think it's an abuse of discretion when you have a motion before you. The court's aware that I have another hearing and that's the reason that I'm not there to deny it and then enter a dispute, you know, deny my motion. Not strike the motion, but deny it, you know, by default. When he's aware that, you know, I'm, you know, litigating another matter, I'm not... The Secretary of State hearing was an administrative hearing? It's an administrative hearing, but it is a time-sensitive hearing. If you ask to continue your hearing, the documents are no longer fresh. They can't be older than 30 days old. So then your client would have to then go get all new letters, evaluations, different things. So it's one of those type of hearings that it causes a lot of inconvenience and cost to your client if you ask to continue it. Did you include a copy of the notice from the Secretary of State with your motion to continue? I cannot remember if it was attached as an exhibit or not, but I know that it's in my affidavit that I represent this person and the hearing is scheduled at the same time. All right. Well, I think the issue that I'm trying to establish here is that I do know they're time-sensitive because of the documents you have to present. The problem is this had been set for eight weeks almost, and by the time it didn't go to hearing, at least, that you weren't there. If you had received this notice two weeks before, it makes sense that maybe you would attach that to show why you've waited. Instead of bringing this motion right after you said it, you didn't know you had a hearing. I honestly don't know if I attached it or not. It may have been attached. I would have to review the profile to answer that correctly, and I don't want to mislead you. I think you will have an opportunity to make the point. Thank you. Ms. Burke, you may proceed. Good morning, Mr. Adams. You need to speak up for us, please. Okay. I've got to clear my throat. So I'm here because Mrs. McAdams is saying that, or Brian is saying, that they didn't get a fair chance in court. And the problem is, is the day of court, I was notified on Friday, November 16th, and the afternoon after 5 at court, they were going to continue it, so I could not get off work at 11 o'clock on Monday for the continuance. I wasn't there, but nor did I have to be there. It said if I wanted to appear, I may appear. And at 1.30, I came to court, and nobody was there. And did you know why they were requesting the continuance? It said that she had a previous court date. Do you have a copy of that notice that she sent you? I do. It was emailed, so they're the e-system. Okay. That's fine. You don't need to find it right now. So you knew that there was an 11 o'clock hearing to determine if the case should be continued, but it was set for hearing at 1.30. Is that the idea? Yes. Had you spoken to your former spouse prior to that time? No. When this rearage was being added up, was it after the 18th birthday of the older child, or was it over a period of time when he wasn't working or when he might have been establishing his new business, to the best of your recollection? Well, Brian has always worked in the same business. The only thing different is he had changed his name. He's been working in the business since he was 17, and he's continued his own business all the way up until this day. He's never had unemployment or any lapse of work that I've known of. So I don't understand what Mrs. McAdams is stating or what it was read. Well, then the more particular question is, once your child turned – well, he graduated from high school first, and then he turned 18. And it is a young man, correct? No, it's a young lady. I'm sorry. That's okay. On that 18th birthday, did he stop making the $1,500 payment and reduce it himself? No. He had never changed it from 2006 until 2018. He then changed it because of the new law, the shared income law, because if he did it the other way where he had changed it, modified it, it would actually hurt him because he was making more money. But that was by court order, correct? He didn't do it just on his own, did he? What was by court order? I'm sorry. The reduction. It didn't come by – he just did the calculations and said, this is all I'm going to pay you. This was the court order, correct? When he went to court, that's when he stopped paying me. So in 2018, his court date, he came with an affidavit, and he came and asked me to modify. And I wasn't for sure of any of the laws or how it worked. So I asked him for his W-2s, and we were supposed to exchange them on the next court date. And the next court date, he had called me and said, Mrs. McAdams and him weren't ready. They didn't have his taxes filed yet because he hadn't shown taxes since 2006. So I was asking, I need to see his income because it has increased since then. And so after that – so that's when he stopped paying me. He started paying me $1,000 a month because he said that's what it would be at that point. Yet it hadn't been determined what his income was. At first, in 2006, we settled at, I think, $60,000 he made at 28%. And now he makes over $100,000. And it was a change of – just one child he took off, but that should have been done previously, but he didn't do it because it would have affected him, if that makes any sense. I don't know. It's hard to explain numbers. When did you finally get all the documents that you had requested? The first document, I've asked for several things, but the first ones I asked for his taxes came May 21st. Of what year? 2018, so it was five months after. So I waited. And then in April, they had asked me one more time, will you please don't go to court today? We can continue it. And I was like, are you sure? And he said, yes, it's fine. So I said, okay, this is it because I don't want to keep continuing and continuing with this. It's been five months, and I'm not getting child support. They're giving me $1,000 a month, and it's not really what it should be. So when Ms. McAdams said that you were not there on a couple of occasions, were you not there because you and Mr. Cosgrove had agreed outside of court that you'd give them more time? Actually, I was there. I had a paperwork on February 20th that they're saying I was not there. I got both of these. I got the pink copy they give you in court and the white copy. And then in April time, that's when he did ask me not to come again, and that's the time I did not go because I gave him one last chance to get his tax records. Were you there in January? Was there a January date of that year? Yes, I was there. You were there. Yes. Let me get the pink for that. Not of 2019, but of 2018. Was there a date in January? Yes. I have all the court, every document that the court had given me, January 23rd. Okay. But that was not pink. Why did you get the yellow at that time? I'm not sure. Okay. At that time, it said that we were supposed to change income, and it never was exchanged. And at that point in March, I was trying to speed up the case, and I asked to see his W-2s and 1099s that he had because I needed to know what he was making. So when May came along, I still didn't have the paperwork to look through. I got it on that court date. So on the court date, I asked. I wanted to see his checking account records for his business because you don't know what someone's writing off in their business or how much they're making. They agreed. I did ask to speak to an attorney because I didn't know what the law was with being able to go to the shared income because what I've known is shared income is supposed to be a substantial change in income. Yes, you can emancipate a child, but it's not really supposed to be. You know, it's just supposed to be for a substantial change of income or unemployment, something like that. You can't just use the statute to reduce what your payments have been done in the past. Right, and that's why I was concerned. And I did see a lawyer. I saw a man in Yorkville. I could not afford the lawyer. He told me that the case was pretty much how I thought it was, and I had no other choice. Like I said, I couldn't afford him, so I just continued on with court. June 7th, I came in again to ask for the documents. I actually believe I made a motion, and then we came in on August 7th, I believe, and nothing. And then on September 25th, the judge said to Brian, you have to have these documents. It states right on there. It says you must give her your documents within, I think, four weeks or something before the court date. So I never received those documents, actually, until December something, after our original court date of November, the trial. I never even received those documents up until that point, so I wouldn't have been able to even, at that trial, he wouldn't have been able to say what he had or, you know what I'm saying, where I couldn't have even been able to check them. So if I could just ask, so why shouldn't child support have been set at $866, retroactive to the date that he filed his motion to modify the child support, which was January 16th, 2018? Certainly, because as of that date, your child was emancipated, in fact, had been emancipated a number of years prior to that. Right, you're right about that. But he had taken all the way to May to just show me his income. That was the problem. I needed to know his income. So years prior to that, if he was making $100,000, he should have been paying 28% on that $100,000. So up until 2017, that's when he wanted to get it changed. That's when he's saying, you know what I'm saying, that's what he's trying to make it. As soon as that rule came out, that's when he wanted to make it shared income. Right, but your child was emancipated in July 2012. Right. So five years before 2017. Well, we had an agreement because my daughter was at college, and I was driving her back and forth paying for her car, insurances. I would bring her food to her dorm. He didn't have a license, so for me to drive back and forth and be a part of all that, it was only $150 more a month, comparable to the 20%. He was saying if he took her off, that would have only saved him $150 a month. So it wasn't worth him coming to court until that new law came into play. Then he said, okay, now it would make sense. That's when he took it back into court. So you had a separate side agreement up until the time the statute changed, is that right? Correct. That you felt needed to be enforced. Correct. Until then, he was in court for arrearages, and he never stated that. My daughter was over 18. He never had anything to say about that part of it. I think that if he was worried about it then, he would have said to the court, I need to get her emancipated. How do I do this? It wasn't until 2017. He was in court in, I believe, September for arrearages. Then he had actually found a lawyer in there, and that's when, 2018, he came into court. Because he had told me in December he was taking me to court to change it all, because it was shared income law. Did your divorce resolution say anything about college expenses or things of that nature? It says, well, I have to read the divorce. I don't have it with me, but it says, may pay child expense or can contribute to, which I filled out the FAFSA form. He was supposed to also, and he denied to fill out the FAFSA form. And that's to get state aid. Yes, or any grant scholarships, which I did. So then my daughter was at school, and I took out all the loans I signed for them because he wouldn't file the FAFSA form. So those loans are all in my name. And that's another problem because now I'm stuck with the loans, which she graduated. Great. But they're still on my credit. That affects your credit. Where did she go to school? U of I, Urbana. So you weren't commuting with her on a daily basis. You'd take her down. You'd go get her when she needed to come home. Correct, or bring her groceries. Now, she did, in her final semester, she had to drive back and forth to school because she couldn't get an apartment because her credit was bad. So then I took out a loan of $7,000 to fix her credit because when she was in school, she made some mistakes. So she couldn't get an apartment. She didn't get money for the dorm, so she'd drive every day back and forth to school, two hours there, two hours back. And so at one point, I was paying for hotels for her. That was figured into the $7,000 I took out because we couldn't have her going every day back and forth to school. It was too hard for her to do that. So I would keep her in a hotel, which I have hotel bills also, and I kept her in a hotel for the week she graduated so she could be up at school with her friends. And are those expenses the ones that the judge did not reimburse to you? I did not ask for those expenses for that. I asked for part of her money for college, which I was denied. And I also asked for my son. That's the younger dad that we still have. Yeah. For some of his stuff. That was like school fees and judo I paid for for two years. And he denied that. But he did have medical, they both did, because he was supposed to be carrying medical insurance on both of them, and he did not for most of the time that we were divorced. I had insurance for two years from 2014 to 2016 on them, and then 2009 to 2013 we were on state-aid insurance. And then Brian bought insurance in 2017, but he stopped paying it. And then in 2018, the judge asked him to redo his insurance. He had it, and it elapsed again this last year, so we don't have insurance again. So in July, as soon as court was over of this year, it ended. He stopped. He didn't tell me until I asked him about taking my son to the doctor's for depression, and he said no, and I was like, why? And then it all came out that that was the problem, he had no insurance. So now I'm working with the state now to get insurance on Cale. You still have time, but you don't have anything else to say? Not really. I do know that in her, Mrs. McAdams affidavit for the Whitewater, when she was at the Secretary of State's office, there was no letter that said she was at the Secretary of State's office for the hearing, and that's kind of, I know you're supposed to prove to the law where you were and why it was so important, but there was not even that in that affidavit that she had sent. It just said where she was at, which was... Well, I assume the affidavit is a sworn affidavit, and she's an officer of the court, so... Right. As far as what I've read, you have to show where you were at, give paperwork. If you want to get that trial moved on to the next thing or thrown out, you need to show that stuff if it's that important. And instead, that day I asked for even his tax records, and they said, well, you can get them if you want. Well, the judge ordered in September for them to have them for me in his checking account, so why now in December after all that? Okay, your time is up. Thank you. Thank you. Mrs. McAdams, you may proceed. Thank you. The whole crux of the issue is whether child support should be retroactive, and retroactive to one point, or to one point. And that, unfortunately, by making it retroactive to the December 7th date, Ms. Burke receives a windfall. She was already receiving, if that's going to be your argument, from 2012 until you brought the petition in whatever year you brought it, 2018, 2017? They had no problem with that. Well, it wasn't that he didn't have a problem with that. He just couldn't afford an attorney to come in and change it. Why were they there for arrearages? Who brought them in for arrearages? HFS. Okay, so he wasn't making his payments to the agency and they brought them in. Or to her. Okay, but at any time he was there, he could have asked to discuss that. Well, you have to file a motion and do all that. You can't just negotiate it without filing a motion. Well, the motions are available, I'm sure, in court because these have been for motions for some time. We've had forms online, which he used for these proceedings. Correct. He knew that he was paying too much in child support, so when he was brought in for the arrearages, that's when he came and hired me to file the motion to modify the child support. But he didn't go to court before that, but he had accumulated arrearages. You could ask if he just stopped paying when he filed the motion. That wasn't correct. And when we had originally, based on the information that she had given us, we had calculated that his child support should be about $1,000 a month. So I was not aware that he had then paid $1,000 a month from January forward. Maybe that's how the judge got to the arrearage numbers he got to. I have no way of knowing that, but he actually was still paying more than he should have because after we did a hearing and figured out his income and her income, it really was $688 a month is what he should have been paying. And by not making it retroactive to the date that he filed, she benefits because he pays an additional year of child support for an adult at that additional amount between $1,534 and $688. Did he pay any of the college expenses? Even if their agreement said that that would be considered later, the FACTS reforms will require maybe a responsibility later, but why wouldn't he sign those? I don't know that what she's portrayed to be is correct. I do know that there was no side agreement, and their daughter graduated high school when she was 21. High school when she was 21? No, college. College. She graduated college when she was 21. And after that point, didn't live with Ms. Burke. So Ms. Burke was receiving this money, this additional amount, for somebody who wasn't living with her, who she wasn't supporting. So it is a windfall to her to allow her to. But she was paying college expenses or the loans that she had agreed to on behalf of the child. But she never petitioned the court asking for contribution from him. So to then say, we're going to make you pay child support for an adult child because you didn't contribute to child support, which she never petitioned for or requested, is unfair to him as well. Because I don't know how much she got in aid. I don't know how much she took in loans. All these are unknowns that really she shouldn't get the benefit of without filing a petition and litigating it. You've heard some information today that, you know, how did this girl go to college? Did somebody wave a magic wand to allow her to go to school? He knew she was in school. Ms. Burke is low income. And if she filed forms, she's likely to have received a significant amount of aid. I have no idea what. Grants are one thing. Loans are another. I don't disagree with that. I myself have two kids who are college-bound. I'm familiar with the process and how expensive it is. But what I'm saying is I have no idea how much the loans were that she took. She talked about a $7,000 amount in a loan. This was never provided to my client, and it was never petitioned for. And the court specifically in his ruling, the trial court, said I can't grant that to you retroactively because at the point she's now filing for that, the child's 24 and has graduated college and had graduated three years before. So he said it's too late to request college expenses at this point. So that shouldn't be held against my client, whether he contributed or not. And I don't know if he did contribute. Truthfully, I have no idea. He may have been giving her the daughter money directly. I don't know. Is it your contention that the denial of the continuance or the striking of the motion to continue and the hearing was an abuse of discretion? Yes. And is it your contention that the denial of the motion to vacate and reconsider was an abuse of discretion? Yes. Is there any other abuse of discretion which you are claiming as error? That's not in my brief. Any other questions? No. Thank you. Thank you. We'll take the case under advisement. We have another case on the call. There will be another short piece.